USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/21/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                         :
BENNETT SANTIAGO,             :
                         :     **OPINION & ORDER**
          Plaintiff,      :
                         :
      -against-        :     19-cv-2051 (KHP)
                         :
COMMISIONER OF SOCIAL SECURITY  :
                         :
         Defendant.     :
                         :
------------------------------------------------------------X

       Plaintiff Bennett Santiago, represented by counsel, commenced this action against

Defendant Commissioner of the Social Security Administration (the "Commissioner"), pursuant

to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking

review of the Commissioner's decision finding that he was not disabled under Sections 216(i)

and 223(d) of the Act from November 1, 2013, Plaintiff's alleged disability onset date ("AOD"),

through August 11, 2017, the date of the Commissioner's decision.

       The parties submitted a joint stipulation in lieu of cross-motions for judgment on the

pleadings (the "Joint Stipulation") pursuant to this Court's order.  Plaintiff appeals the

administrative law judge's ("ALJ") decision concerning:  (1) whether the ALJ properly developed

the record to account for the period after Plaintiff had back surgery and in doing so, whether

the ALJ properly discounted the opinion of Dr. Paul Brisson, one of Plaintiff's treating medical

providers; (2) whether the ALJ properly calculated a specific limitation in his assessment of

Plaintiff's residual functional capacity; (3) whether the ALJ properly assessed Plaintiff's

subjective complaints; and (4) whether the ALJ was able to adjudicate Plaintiff's claim under

the Appointments Clause of the United States Constitution.  For the reasons set forth below, the Commissioner's motion is GRANTED, and Plaintiff's motion is DENIED.

**I.    Procedural History**

Plaintiff was born on October 16, 1969 and currently is 50 years old.  He has attained his GED.  He worked as an exterminator prior to an on-the-job injury.  Soon afterwards, he claimed he was unable to work.  He currently receives Workers' Compensation payments.  As of his hearing on August 11, 2017, he lived with his daughter in an apartment.  Plaintiff had a left knee arthroscopy on April 29, 2014 and on March 1, 2016, Plaintiff had surgery on his spine (specifically, an "[a]nterior/posterior lumbar fusion of the L4-L5 and L5-S1 levels," Administrative Record ("Tr") at 410).

Plaintiff filed his initial claim for disability insurance benefits ("DIB") on October 6, 2014. He asserted conditions including lower back, left knee, and left and right ear stapedectomy as disabling.  He claimed an alleged onset date of disability on November 1, 2013, the date he last worked.  The Commissioner denied Plaintiff's initial application for benefits on November 6, 2014.  Plaintiff contested the denial and filed a request for hearing which was granted.  On June 6, 2017, the Commissioner held a hearing on Plaintiff's claim.  Plaintiff appeared before ALJ Elias Feuer.  During the hearing, Plaintiff primarily testified about his back and knee conditions.

Based on the medical records and on Plaintiff's testimony, the ALJ determined Plaintiff's residual functional capacity ("RFC")–the maximum work Plaintiff could do despite his limitations.  The ALJ posed a hypothetical based on that RFC to Carl Schultz, a vocational expert ("VE").  The VE testified at the hearing that there were jobs in the national economy for individuals with limitations like those of Plaintiff; namely, a surveillance system monitor, order

clerk, and lens inserter.  The ALJ found Plaintiff was not disabled for the purposes of Social

Security and denied his application for benefits on August 11, 2017.  Plaintiff appealed to the

Appeals Council.  The Appeals Council denied his application on February 11, 2019.  The instant

case followed.

## II.    *The Commissioner's Decision*

In rendering his decision, the ALJ first determined that Plaintiff met the insured status

requirement for DIB under the Social Security Act through December 31, 2018.  He then applied

20 C.F.R. § 404.1520 (a)(4)'s five-step sequential process to evaluate Plaintiff's claim.  At step

one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his AOD,

November 1, 2013.  At step two, the ALJ concluded that Plaintiff suffered from the following

severe impairments:  torn meniscus at the left knee and lumbar L4-L5 and L5-S1 disc

herniations with nerve root impingement.  The ALJ also considered Plaintiff's hearing/ear

condition but found it to be non-severe because of a lack of evidence of "significantly limiting

effects on Plaintiff's functional capacity."  Tr. 15.

At step three, the ALJ found that Plaintiff's impairments, individually and collectively,

failed to meet or equal the severity of the impairments in the Listings.  The ALJ explicitly

considered sections of Listing 1 (Musculoskeletal System), specifically Listing 1.04 (Disorders of

the spine) but found that the objective medical findings were insufficient to meet a Listing.

At step four, the ALJ assessed Plaintiff's RFC.  *See* 20 C.F.R. § 416.945(a)(1).  The ALJ

found that, through the hearing date, Plaintiff had the RFC to perform sedentary work as

defined in 20 C.F.R. § 416.967(a) subject to certain limitations.[1]  These restrictions included

certain types of movement such as "occasionally[2] climbing ramps and stairs, stooping, kneeling,

and crouching, as well as "sit[ting] for up to six hours in an eight-hour workday[] and stand

and/or walk for up to two hours in an eight hour workday."  Tr. 15.  Further, Plaintiff

"require[d] a sit/stand option allowing for switching positions as often as every 15 minutes and

standing for a minimum of 5 minutes, all while remaining on task."  *Id.*  Relying on the

testimony of the VE, he found that there were jobs, such as surveillance system monitor, order

clerk, and lens inserter, that someone with Plaintiff's RFC could perform.  Thus, the ALJ held

that Plaintiff was not disabled as of November 1, 2013, the AOD.

## DISCUSSION

### I.   *Applicable Law*

#### A.   *Judicial Standard of Review of the Commissioner's Decision*

A court's review of the Commissioner's denial of disability benefits is limited to two

inquiries.  *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987); *Dwyer v. Astrue*, 800 F. Supp.

2d 542, 546 (S.D.N.Y. 2011).  The court must determine whether the Commissioner applied the

correct legal principles in reaching a decision and whether the Commissioner's decision is

supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Estrella v. Berryhill*, 925

F.3d 90, 95 (2d Cir. 2019).  If the Commissioner's decision is supported by substantial evidence

---

[1] Sedentary work is defined as "work involve[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a)

[2] "Frequently" and "occasionally" are terms of art under Social Security regulations.  *See Rivera v. Comm'r of Soc. Sec.*, 394 F. Supp. 3d 486, 496 (S.D.N.Y. 2019) (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)).  Frequently means "from one-third to two-thirds of the time."  SSR 83-14.  Occasionally means "very little up to one-third of the time."  *Id.*

in the administrative record, the ALJ's findings as to any facts are conclusive.  42 U.S.C. § 405(g) & § 1383(c)(3).

An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure may have affected the disposition of the case.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  This applies to an ALJ's failure to follow an applicable statute, regulation, or Social Security Ruling ("SSR").  *See, e.g.*, *id.* (discussing failure to follow a regulation); *Schaal v. Callahan*, 993 F. Supp. 85, 93 (D. Conn. 1997) (discussing failure to follow SSR).  In such a case, the court may remand the matter under sentence four of 42 U.S.C. § 405(g), especially if necessary to allow the ALJ to develop a full and fair record or to explain his reasoning.  *See, e.g.*, *Donnelly v. Colvin*, No. 13-CV-7244 AJN RLE, 2015 WL 1499227, at *8 (S.D.N.Y. Mar. 31, 2015); *Rivera ex rel. S.M.H. v. Colvin,* 9 F. Supp. 3d 309, 316 (S.D.N.Y. 2014).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, it must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (citation and internal quotation marks omitted); *Donnelly*, 2015 WL 1499227, at *8.  The threshold is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Substantial evidence is "more than mere scintilla" and "means—and means only—such relevant evidence as reasonable mind might accept as adequate to support a conclusion."  (citations and internal quotation marks omitted); *accord Estrella*, 925 F.3d at 95.  Under the standard, a reviewing court may reject an ALJ's findings of fact "only if a reasonable factfinder would *have to conclude otherwise*."  *Brault*, 683 F.3d at 448 (emphasis in original) (citation and internal quotation marks omitted).  This is a

5

"highly deferential standard of review." *Negron v. Berryhill*, 733 F. App'x 1, 2 (2d Cir. 2018) (noting that, where there is more than one rational interpretation, the Commissioner's decision will stand).  Under a substantial evidence standard, a court may not substitute its judgment even where a different result may be justifiable upon a *de novo* review.  *Marshall v. Colvin*, No. 16-CV-5631(NSR)(JCM), 2019 WL 1529377, at *2 (S.D.N.Y. Apr. 9, 2019) (citing *Ortiz v. Berryhill*, No. 17-CV-4751(RWS), 2018 WL 3360755, at *7 (S.D.N.Y. July 10, 2018)).

To be supported by substantial evidence, the ALJ's decision must be based on a consideration of all the evidence available in the record.  *See* 42 U.S.C. § 1383(c); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  While the ALJ's decision need not "mention[] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (citation and internal quotation marks omitted), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.  *See Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 82–84 (2d Cir. 2009) (discussing mischaracterizing evidence); *Kohler*, 546 F.3d at 268–69 (discussing overlooking evidence); *Ruiz v. Barnhart*, No. 01-cv-1120 (DC), 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (discussing ignoring evidence).  If the decision applies the correct legal standards and is based on substantial evidence, the reviewing court must affirm; otherwise, the court may modify or reverse the decision, with or without remand. 42 U.S.C. §§ 405(g) & 1383(c)(3).

### B.  Legal Principles Applicable to the Commissioner's Disability Determination

Under the Act, every individual considered to have a "disability" is entitled to benefits. 42 U.S.C. §§ 423 & 1382.  The Act defines "disability" as an inability "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not less

than twelve months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  A claimant's impairments

must be "of such severity that she is not only unable to do her previous work but cannot,

considering her age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A) & 1382c(a)(3)(B).

To determine whether an individual is entitled to receive disability benefits, the

Commissioner is required to conduct the following sequential five-step inquiry:

(1) Determine whether the claimant is currently engaged in any substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(i).

(2) If not gainfully employed, determine whether the claimant has a "severe impairment" that significantly limits his or her ability to perform basic work activities. Under the applicable regulations, an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities is considered "severe."  20 C.F.R. § 416.920(a)(4)(ii).

(3) If the claimant has a "severe impairment," determine whether the impairment is one of those in the Listings – if it is, the Commissioner will presume the claimant to be disabled.  20 C.F.R. § 416.920(a)(4)(iii).  The Commissioner must also determine the claimant's ability to perform physical and mental work activities on a sustained basis despite his impairments, his RFC.[3]  20 C.F.R. § 416.920(a)(4)(iv).

(4) If the claimant does not meet the criteria set forth in the Listings, the Commissioner next must determine whether the claimant possesses the requisite RFC to perform past work.  *Id.*

---

[3] A claimant's RFC is "the most [he] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).  The ALJ's assessment of a claimant's residual functional capacity must be based on all relevant medical and other evidence, including objective medical evidence, such as x-rays and MRIs, the opinions of treating and consultative physicians, and statements by the claimant and others concerning the claimant's impairments, symptoms, physical limitations, and difficulty performing daily activities.  *See, e.g., Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

> (5) If the claimant is not capable of performing work performed in the past or has no history of past work, the Commissioner must determine whether the claimant can perform other substantial gainful work which exists in the national economy.

*Id.*; 42 U.S.C. § 1382c(a)(3)(B); *see, e.g.*, *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *Gonzalez v. Apfel*, 61 F. Supp. 2d 24, 29 (S.D.N.Y. 1999).

The claimant bears the burden of proof at the first four steps of the Commissioner's analysis.  *See*, *e.g.*, *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *Gonzalez*, 61 F. Supp. 2d at 29.  At the last step, the Commissioner has the burden to show that "there is other gainful work in the national economy which the claimant could perform."  *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998); *see Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

## II.  *Analysis*

This Court first addresses the ALJ's affirmative duty to develop the record and then the ALJ's assessment of a limitation in Plaintiff's RFC and of Plaintiff's subjective complaints.  The Court then turns to Plaintiff's constitutional challenge under the Appointments Clause.

### A.  *Development of the Record*

Plaintiff argues that the ALJ failed to properly develop the record because the opinions on which the ALJ relied were given in the period before Plaintiff had his back surgery in March 2016.  Plaintiff further argues that the April 5, 2017 opinion of Doctor Paul Brisson, Plaintiff's treating orthopedic surgeon, should be controlling in the absence of another expert opinion contradicting it in that period.  Dr. Brisson's April 2017 opinion is the latest on record.

Defendant argues that the ALJ properly weighed the evidence in the record and had no responsibility to further develop the record.

In Social Security proceedings, the ALJ must affirmatively develop the record on behalf of all claimants, including those represented by counsel. *See Moran v. Astrue*, 569 F.3d 108, 112–13 (2d Cir. 2009); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). The ALJ must investigate the facts and develop the arguments for and against granting benefits. *Perez*, 77 F.3d at 47. This is a threshold question. Accordingly, "the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record." *Intonato v. Colvin*, No. 13 CIV. 3426 JLC, 2014 WL 3893288, at *8 (S.D.N.Y. Aug. 7, 2014) (*quoting Scott v. Astrue,* No. 09-cv-3999 (KAM)(RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010)). Remand is appropriate when the ALJ fails to discharge this duty. *See, e.g.*, *Moran*, 569 F.3d at 114–15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making her decision.").

Plaintiff contends that the ALJ failed to properly develop the record because Plaintiff had back surgery, specifically a spinal fusion, in March 2016. Here, the ALJ gave "little weight to the conclusory opinions and ratings" from Plaintiff's treating doctors because they "fail to provide a functional analysis and offer a conclusion on an issue that is reserved to the Commissioner." Tr. 18. Plaintiff's treating physicians consistently rated Plaintiff as fully disabled as part of his Workers' Compensation claim.

In contrast, the ALJ gave the opinions of Workers' Compensation independent medical examiners "good weight" and noted that they "consistently opined that the claimant was

capable of work consistent with sedentary exertion, in harmony with the medical evidence of

record." *Id.* at 20.  The opinions of independent medical examiners may constitute substantial

evidence.  *See Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015) ("It is well-settled that

a consulting physician's opinion can constitute substantial evidence supporting an ALJ's

conclusions"); *see also Biestek*, 139 S. Ct. at 1154 (describing substantial evidence as only "such

relevant evidence as reasonable mind might accept as adequate to support a conclusion").

These opinions generally found that Plaintiff was capable of sedentary work.  Dr. Jeffrey

Ritholz[4] opined on March 27, 2014 that Plaintiff "is capable of working full-time with the

restrictions of no lifting, pushing, pulling, or carrying over 30 pounds." *Id.* at 363-66.  Dr.

Stanley Soren on March 21, 2014 did find evidence of total disability, with limitations to

prolonged standing/walking and other movements but noted only mild and moderate

tenderness to the left knee and back. *Id. at* 393-95.  Dr. Jay Nathan opined on October 8, 2014

that Plaintiff had "a moderate (50%) degree of disability" and was able to "return to light duty

work in a mostly sedentary capacity with restrictions of no lifting greater than 10 lbs." *Id.* at

521.  Dr. Nathan again opined on June 10, 2015 that Plaintiff had "moderate (50%) partial

disability. *Id.* at 532.  Dr. Norman J. Marcus opined on February 25, 2015 that Plaintiff had a

50% "[d]egree of disability of left knee and low back." *Id.* at 512.  Dr. Marcus noted in his

report that Plaintiff's "physical examination reveal[ed] symptom magnification." *Id.* at 511.

This was the last report of an independent medical examiner.  Insofar as the independent

---

[4]  The Court notes Dr. Ritholtz is a chiropractor.  As such, he is not an acceptable medical source under SSA
regulations and his opinion cannot be controlling.  *See* 20 C.F.R. § 404.1502.  However, chiropractors are medical
sources whose opinions may be used considered as part of the overall record to "evaluate the severity of an
individual's impairment(s) and its effects on the individual." 82 Fed. Reg. 11, 5847 (January 18, 2017).

examiners' opinions have not been rendered stale over the time period between June 2015 and the ALJ's decision in August 2017, they constitute substantial evidence.

Plaintiff argues that the ALJ could not properly rely on the opinions of the independent medical examiners and instead should have ordered a consultative exam to further develop the record. Plaintiff cites primarily to an out-of-district case,[5] *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464 (W.D.N.Y. 2018) to support the proposition that the ALJ had a duty to further develop the record because the opinions were given prior to a surgery and therefore could not be substantial evidence. In *Biro*, the court found that the independent medical examination upon which the ALJ relied was stale because it was rendered "nearly five years before the ALJ's decision and before" plaintiff's condition deteriorated because of a fall which then led to two surgeries. *Biro*, 335 F. Supp. 3d at 470–71. As such, "significant deterioration" may render opinions stale. *See Natrella v. Comm'r of Soc. Sec.*, No. 1:19-CV-01237 (SDA), 2020 WL 1041067, at *7 (S.D.N.Y. Mar. 3, 2020). However, "a medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole." *Biro*, 335 F. Supp 3d at 470; *see Natrella*, 2020 WL 1041067, at *7.

Here, there is no evidence of an intervening event (such as a new injury) or significant deterioration to render the opinions of the independent medical examiners stale**.** There was evidence of continued issues with his knee and back with some degree of deterioration.

---

[5] Plaintiff also cites to two distinguishable Southern District of New York cases. The first, *Barrie on behalf of F.T. v. Berryhill*, No. 16CIV5150CSJCM, 2017 WL 2560013, at *10–11 (S.D.N.Y. June 12, 2017), dealt with a case where there were no treating physicians' opinions at all and the ALJ did not seek any. In *Martin v. Colvin*, No. 13-CV-2827 VSB RLE, 2014 WL 4467709, at *13–14 (S.D.N.Y. Sept. 10, 2014), the ALJ also had no consultative examiners' opinions on which to rely and therefore interpreted the evidence herself to find the plaintiff not disabled.

However, there were still medical signs that showed no deterioration or minor improvement. *See, e.g.*, 809 (Dr. Brisson noting that "[a]ctivities of daily living that are strenuous provoke[s] pain" in Dec. 2016); 686 (Dr. Graziosa changing his opinion from totally disabled to disabled "from heavy duty work 75%" in March 2017).  Though there are other signs indicating that there was some deterioration and which support a different view of the evidence, it not to the degree that a reasonable factfinder would have had to arrive at a different conclusion from the ALJ.  The Court does not have the discretion to render a new analysis of the evidence.  *See Brault*, 683 F.3d at 448 (finding that a Court may overturn an ALJ's findings of fact only where "a reasonable factfinder would *have to conclude otherwise*" (emphasis in original)); *Marshall*, 2019 WL 1529377, at *2 (noting that it is not the place of the court "to determine for itself whether the plaintiff was disabled") (quoting *Burke v. Comm'r of Soc. Sec.*, No. 16-CV-6520(KMK)(PED), 2017 WL 6029166, at *2.  Thus, the independent medical examiners' opinions are not stale and continue to be substantial evidence.

Plaintiff argues that the ALJ misapplied the treating physician rule in failing to accord controlling weight to the April 5, 2017 opinion of Dr. Brisson in the absence of an opinion of an independent examiner post-back surgery.[6]  Dr. Brisson opined that Plaintiff was totally disabled and unable to return to work.  Tr. 811.  Applicable regulations provide that so long as a treating physician's medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the]

---

[6] Plaintiff does not challenge the application of the treating physician rule as it could apply to Plaintiff's other physicians, and thus the Court does not address the rule in relation to those other physicians.

record," it must be given controlling weight. 20 C.F.R. § 416.927(c)(2); *see* SSR 96-2p[7]

(providing guidance regarding the treating physician rule); *Bliss v. Comm'r of Soc. Sec.*, 406 F.

App'x 541, 541–42 (2d Cir. 2011). However, a treating physician's opinion need not be given

controlling weight where other substantial evidence on the record contradicts it. *Monroe v.*

*Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) (citations omitted). Less weight will be

given where the opinion is inconsistent with the record as a whole. *Snell v. Apfel*, 177 F.3d 128,

133 (2d Cir. 1999). A doctor's opinion that a claimant is "disabled" is not given special

significance because that determination is reserved to the Commissioner. 20 C.F.R. §

404.1527(d)(3); *see Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012) (finding that a treating

physician's statement that claimant is disabled cannot be determinative). The Court must defer

to the Commissioner when there are genuine conflicts in the medical record. *Monroe*, 676 F.

App'x at 8 (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir.2002).

When not giving controlling weight to a treating physician's medical opinion, the ALJ

must provide good reason. *See* 20 C.F.R. § 416.927(c)(2); *Estrella*, 925 F.3d at 96. Under the

precedent of the United States Court of Appeals for the Second Circuit, the ALJ, generally, must

address: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of

medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining

medical evidence; and (4) whether the physician is a specialist,'" when discounting a treating

physician's medical opinion (hereinafter, the "*Burgess* factors"). *Estrella*, 925 F.3d at 96-97

(alteration in original) (quoting *Selian*, 708 F.3d at 18); *see Burgess v. Astrue*, 537 F.3d 117, 129

---

[7] SSR 96-2p was rescinded by 82 Fed. Reg. 57 (Mar. 27, 2017). This ended the treating physician rule for applications filed after March 27, 2017.

(2d Cir. 2008).  An ALJ's failure to address these factors or provide good reason when assigning

less than controlling weight to a treating physician's medical opinion is error and grounds for

remand.  *Estrella,* 925 F.3d*.* at 96; *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).  A

reviewing court need not remand, however, if "a searching review of the record assures [the

court] that the substance of the treating physician rule was not traversed."  *Estrella*, 925 F.3d at

97 (internal quotation marks omitted) (quoting *Halloran*, 362 F.3d at 33); *Halloran*, 362 F.3d at

31–33 (affirming even where "it is unclear on the face of the ALJ's opinion whether the ALJ

considered (or even was aware of) the applicability of the treating physician rule").

    Here, the ALJ addressed substantially each of the *Burgess* factors.  Exact, "slavish

recitation of each and every factor" is not required "where the ALJ's reasoning and adherence

to the [treating physician rule is] clear."  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

The ALJ noted the periods from which there were reports from Dr. Brisson.  Tr. 18 (noting

reports from Jan. 2015 through April 2017).  He noted that Dr. Brisson performed back surgery

on Plaintiff.  Though he did not explicitly address the evidence upon which Dr. Brisson

recommended surgery, he cited to the underlying notes detailing why Dr. Brisson

recommended surgery and the results thereof.  *Id.*  The ALJ also discussed the consistency of

the opinion with the other evidence by comparing results from Dr. Brisson, such as

improvement in radicular symptoms and intact strength and sensation that undercut a finding

of total disability.  *Id.*  It is clear the ALJ also compared Dr. Brisson's opinions with those of the

independent medical examiners and with Plaintiff's activities of daily living.  The ALJ gave good

reason to discount the opinions of Plaintiff's treating physicians, including Dr. Brisson.  The ALJ

found the treating physicians' opinions to be conclusory because they did not provide

14

functional assessments and were related to Plaintiff's capacity for past work as an
exterminator.  Tr. 17.

Here, there is an evidentiary conflict between Dr. Brisson's opinion and other evidence
in the record.  It is not the Court's place to resolve evidentiary conflicts; it is a task left to the
Commissioner.  *See Veino*, 312 F.3d at 588 (2d Cir.2002); *Clark v. Comm'r of Soc. Sec.*, 143 F.3d
115, 118 (2d Cir. 1998); *Carroll*, 705 F.2d at 642.  The ALJ resolved the conflict by discounting
Dr. Brisson's opinion.  Substantial evidence is a deferential standard, and here substantial
evidence supports the ALJ's decision.  *See Biestek*, 139 S. Ct. at 1154; *Halloran*, 362 F.3d at 33.

### B.  Residual Functional Capacity

Plaintiff contends the ALJ erred in his RFC assessment, arguing that 1) one of the
limitations was not supported by a medical opinion, and 2) the ALJ failed to properly assess
Plaintiff's subjective complaints.

The ALJ's RFC assessment is step four of the five step analysis.  Thus, the Plaintiff has the
burden to prove disability within the meaning of the Act.  20 C.F.R. § 404.1520; *Smith v.
Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("[Plaintiff] had a duty to prove a more restrictive
RFC, and failed to do so.").  The ALJ must weigh all the available evidence available to make an
RFC finding consistent with the record as a whole and may resolve disputes between conflicting
evidence.  *Matta*, 508 F. App'x at 56; *cf. Heaman v. Berryhill*, 765 F. App'x 498, 500 (2d Cir.
2019) (noting that an ALJ may not "substitute his own expertise or view of the medical proof
for the treating physician's opinion, [though] the ALJ may choose between properly submitted
medical opinions.") (internal citations and quotation marks omitted).  Notably, the ALJ's
determination need not completely adopt any single medical opinion.  *Matta*, 508 F. App'x at

56 (holding that the ALJ's RFC assessment need "not perfectly correspond with any of the opinions of medical sources" so long as it is "consistent with the record as a whole.").  In making an RFC finding, an ALJ need not cite to any specific evidence or lack thereof so long as the requirements for the RFC finding are reasonably inferable from substantial evidence.  *See Trepanier v. Comm'r of Soc. Sec. Admin.,* 752 F. App'x 75, 79 (2d Cir. 2018) (holding the ALJ did not err where the ability to meet an exertional requirement is inferable from other substantial evidence).  And, because Plaintiff bears the burden, a lack of supporting evidence can constitute substantial evidence, especially when coupled with inconsistent evidence.  *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015).  Notably, an ALJ may determine limitations to a plaintiff's RFC so long as there is substantial evidence in the record to support the finding.  *See Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) (rejecting a plaintiff's argument "that an ALJ cannot determine a claimant's functional limitations without the support of at least some medical opinion concerning those limitations")

1. **Specific Limitation**

In regard to Plaintiff's RFC, the ALJ found that Plaintiff was capable of performing some sedentary work and had the capacity to:

> lift and/or carry up to 10 pounds occasionally, push and/or pull at similar limits, sit for up to six hours in an eight-hour workday, and stand and/or walk for up to two hours in an eight-hour workday. However, the claimant is limited to occasional climbing of ramps and stairs, occasional stooping, kneeling and crouching, and no crawling. In addition, the claimant requires a sit/stand option allowing for switching positions as often as every 15 minutes and standing for a minimum of 5 minutes, all while remaining on task.

Tr. 15.  Plaintiff takes particular issue with the last limitation, the requirement of a "sit/stand option allowing for switching positions as [often] as every 15 minutes and standing for a

minimum of 5 minutes, all while remaining on task."  Joint Statement at 37.  Plaintiff cites to a

Western District of New York case, *Quinn v. Colvin*, 199 F. Supp. 3d 692 (W.D.N.Y. 2016), to

support his proposition.  In *Quinn*, the ALJ's RFC assessment had a limitation regarding changing

position that was supported by neither medical evidence nor testimonial evidence and

therefore not supported by substantial evidence.  *Id.* at 713.  That is not the case here.

Rather, the ALJ here assessed Plaintiff's RFC from a variety of factors that are apparent

in the testimonial record and the medical evidence.  The limitation is actually more restrictive

than the evidence suggests and shows that the ALJ analyzed factors from the complete record.

*See Pellam v. Astrue*, 508 F. App'x 87, 90 n.1 (2d Cir. 2013) (finding that an ALJ took a factor into

consideration when adding a restriction not otherwise discussed on the record).  As to the

testimonial record, Plaintiff testified that the pain in his leg was tolerable for a period before he

would need to move it.  Specifically, Plaintiff stated that he would need to move his leg after 15

to 20 minutes.  *See* Tr. 41.  Plaintiff continued on to testify that his back would lock up if he sat

down too long.  *Id.*  Though there was some evidence of problems with prolonged sitting, there

is medical evidence that Plaintiff was capable of sedentary work as previously discussed.

Further, one of Plaintiff's treating physicians, in March 2017, Dr. Graziosa, opined that Plaintiff

was disabled from "*heavy duty work* 75%," which is not inconsistent with sedentary work.  Tr.

686 (emphasis added).  Here, there is evidence suggesting that Plaintiff was capable of the full

range of sedentary work.  The ALJ analyzed the whole record and added a limitation that was

more restrictive than the full range.

The ALJ was entitled to look all evidence in the record to formulate Plaintiff's RFC.

*Matta*, 508 F. App'x at 56.  Even though there was conflicting evidence in the record, it is the

Commissioner's role to resolve conflicts in the record.  *Id.*; *see Micheli*, 501 F. App'x at 29-30

(noting that "it is the sole responsibility of the ALJ to weigh all the medical evidence and resolve

any material conflicts in the record").  Substantial evidence is a deferential standard.  The Court

is satisfied that the standing/sit limitation is supported by substantial evidence.

**2.  Subjective Complaints**

Plaintiff argues that the ALJ did not support his assessment of Plaintiff's subjective

complaints with substantial evidence.

There is a two-step process to determine whether a claimant is accurately describing

the severity of symptoms caused by a medical condition or impairment.  20 C.F.R. § 416.929.

First, the ALJ must determine whether the claimant, in fact, suffers from an underlying medical

condition or impairment; secondly, the ALJ must determine whether such a condition or

impairment could reasonably be expected to cause the symptoms claimed.  20 C.F.R. § 416.929;

SSR 16-3P, 2016 WL 1119029 (S.S.A. Mar. 16, 2016).[8]  An ALJ "is not required to accept the

claimant's subjective complaints without question; he may exercise discretion in weighing the

credibility of the claimant's testimony in light of the other evidence in the record."  *Martes v.

Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 762-63 (S.D.N.Y. 2018) (internal quotation marks

omitted) (quoting Barry, 606 F. App'x at 622 (2d Cir. 2015)).

When assessing the existence and severity of symptoms arising from the claimant's

underlying medical condition or impairment, applicable regulations state that an ALJ should

inquire about various factors, including:  the claimant's daily activities; intensity and

---

[8] SSR 16-3P was superseded by SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017), which eliminated the use of the term "credibility" and clarified that, in examining a claimant's symptoms, an ALJ is not evaluating the claimant's character.

persistence of pain and other symptoms; the factors that aggravate the claimant's symptoms; and the treatments and medications used to alleviate the pain. § 416.929; *see also* SSR 16-3P, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). However, the ALJ does not need to discuss all the factors so long as the ALJ's determination "includes precise reasoning, is supported by evidence in the case record, and clearly indicates the weight the ALJ gave to the claimant's statements and the reasoning for that weight." *Simmons v. Comm'r of Soc. Sec.*, 103 F. Supp. 3d 547, 569 (S.D.N.Y. 2015) (quoting *Felix v. Astrue*, No. 11-CV-3697 KAM, 2012 WL 3043203, at *1 (E.D.N.Y. July 24, 2012)). An ALJ must explain a decision to reject plaintiff's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence." *Bracken v. Colvin*, No. 16-cv-9488 (LTS)(KHP), 2017 WL 5999952, at *12 (S.D.N.Y. Sept. 19, 2017), *adopted by,* No. 16-cv-9488 (LTS)(KHP), 2017 WL 6001846 (S.D.N.Y. Dec. 4, 2017) (quoting *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)). "It is the function of the [Commissioner], not [the reviewing court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Martes*, 344 F. Supp. 3d at 759 (alteration in original) (citation omitted).

After weighing the above factors along with a claimant's demeanor and other indicia of credibility, the ALJ may discredit the claimant's subjective view of his or her impairment. *See id.* Where an ALJ's evaluation of the severity of a claimant's symptoms is supported by substantial evidence in the record, that finding should be upheld. *See, e.g.*, *Reynolds v. Colvin*, 570 F. App'x 45, 49 (2d Cir. 2014) (holding that substantial evidence supported ALJ's determination that claimant was not disabled due to pain where evidence in the record

19

contradicted their testimony that their pain had been constantly debilitating during the relevant period); *Bracken*, 2017 WL 5999952, at *12 (holding that ALJ properly assessed the severity of claimant's symptoms where he "contrasted Plaintiff's subjective complaints with her treatment history and evidence in the record, and properly noted that objective and clinical findings did not support the complaints and functional limitations to the extent alleged."); *de Roman v. Barnhart*, No. 03CIV.0075(RCC)(AJP), 2003 WL 21511160, at *13–14 (S.D.N.Y. July 2, 2003) (finding that the ALJ appropriately determined that claimant overstated the severity of her symptoms and was able to meet requirements of light work in light of testimony regarding activities of daily life).

Here, the ALJ compared Plaintiff's subjective complaints with the evidence in the record, and Plaintiff's testimony to conclude that the symptoms arising from his impairments were less severe than alleged.  At the hearing, the ALJ afforded Plaintiff the opportunity to answer questions concerning the factors that should be considered when evaluating the severity of a claimant's symptoms pursuant to 20 C.F.R. § 416.929 including his daily activities; the location, duration, frequency, and intensity of his pain; factors that made his pain worse; the medication he took to alleviate his symptoms and their side effects; and treatment, other than medication, he had received to treat his symptoms. *See* Tr. at 35-51.  The ALJ also considered medical evidence as discussed above along with the non-medical evidence.  Plaintiff testified that he was essentially bedridden.  Specifically, the ALJ asked him how many hours of the day he laid down other than sleep.  Tr. 42.  Plaintiff answered that he spent 10-15 hours of

the day in bed.[9]  However, the ALJ noted exams from Plaintiff's treating physicians and the

independent medical examiners that showed that Plaintiff was not as limited and had more

capability than claimed.  *See, e.g.*, Tr. 16 ("[T]he claimant retained full strength at all

extremities had no gait disturbance."), Tr. 18 (noting improvement in radicular symptoms as

well intact strength and sensation after back surgery; noting "improvement at the left knee . . .

following surgery").  Importantly, the ALJ noted that one doctor found evidence of symptom

magnification by Plaintiff, that there were conflicting reports in the record, and improvement

notwithstanding Plaintiff's claims of debilitating symptoms.

The ALJ found that there was "inconsistent information regarding the claimant's

capacity for daily activities."  Tr. 21.  Particularly, the ALJ noted Plaintiff's ability to take care of

his personal needs, use public transportation, travel independently, and walk to buy groceries.

The ALJ also noted that, in December 2016, Plaintiff reported that "pain was elicited by

strenuous activity."  *Id.* (referring to Tr. 809).  The ALJ also discussed treatment that both

improved Plaintiff's symptoms and which evidenced more capability than Plaintiff claims of

total disability, specifically Plaintiff's capacity to participate in physical therapy treatment.

These activities support the ALJ's finding that Plaintiff was not completely disabled under Social

Security regulations.

Plaintiff argues that the ALJ's implication of physical therapy as contradictive of work

limitations is not reasonable and that "the record does not grossly contradict Plaintiff's stated

limitations."  Joint Statement 42-43.  For the first point, Plaintiff cites to out-of-circuit cases

---

[9] Plaintiff's *ex post facto* argument that the answer was unresponsive is unpersuasive.  The Court does not see
inconsistency with Plaintiff's claims that he is essentially bedridden with Plaintiff's need for sleep.

that note exercise is not inconsistent with disabling pain.  For the second, Plaintiff cites to cases in the Second Circuit that warn of the dangers of giving excessive weight to Plaintiff's daily activities.  Notably, Plaintiff has not cited to, and the Court has not found, that the record must "grossly contradict" Plaintiff's claims for the ALJ to find that the record does not support a plaintiff's testimony.  *Id.* at 43.  As discussed above the ALJ did not depend solely on either Plaintiff's ability to participate in physical therapy nor solely on Plaintiff's daily activities.  Instead, the ALJ specifically discussed a variety of factors that were considered including medical evidence.  The ALJ is within his discretion to examine Plaintiff's allegations in light of other evidence in the record.  *Martes*, 344 F. Supp. 3d at 762-63.  The ALJ set forth his specific reasoning and compared Plaintiff's allegations with a variety of evidence in the record.

The above constitutes substantial evidence supporting the ALJ's determination that Plaintiff's symptoms are not as severe as he alleged.  In analyzing the ALJ's evaluation of Plaintiff's testimony regarding his symptoms, this Court lacks the discretion to reweigh the evidence he considered and is limited to determining whether the two-step analysis required to assess the severity of Plaintiff's symptoms was correctly applied.  Because the ALJ correctly applied this test, there is no basis to disturb his determination as to Plaintiff's allegations.

### B.  *Constitutional Appointment*

Plaintiff argues that the ALJ was not constitutionally appointed under the Appointments Clause which demands a remand for a new hearing with a different, constitutionally appointed ALJ.  At the time of the decision, the ALJ had not been appointed by the Commissioner.[10]  The

---

[10] On July 16, 2018, the then-acting Commissioner approved all appointments as her own.  *See* 84 Fed. Reg. 9582-02 (Mar. 15, 2019)

Commissioner contends that Plaintiff has waived this challenge because Plaintiff failed to raise it prior to the instant proceedings, neither before the ALJ nor the Appeals Counsel.

Pursuant to the Appointment Clause, "inferior officers" of the United States can only be appointed by the President, courts of law, or heads of departments.  Plaintiff cites to *Lucia v. Securities and Exchange Commission* for the proposition that the ALJ in this case is an inferior officer (rather than an employee) who must be properly appointed before the ALJ may adjudicate this matter.  138 S.Ct. 2044 (2018).  The United States Supreme Court in *Lucia* held that Securities and Exchange Commission ALJs, who have similar duties and powers as a Social Security ALJ, were inferior officers under the Appointment Clause, and therefore had to be duly appointed.  *Id.* at 2054-55.  The Court found that the appropriate remedy "given a timely challenge to the constitutional validity of the appointment of an officers who adjudicates his case. . . .[is a] new hearing before a properly appointed official."  *Id.* at 2055 (citation and internal quotation marks omitted).

Here, the Commissioner does not debate the Social Security ALJs are officers and thereby subject to challenge under the Appointments Clause; rather, the only issue at hand is whether Plaintiff's challenge is timely.  *See generally* Joint Statement at 50-51.  The SSA has tacitly acknowledged that the issue is timeliness by issuing SSR. 19-1p (effective March 15, 2019), which effectively allows for new hearings in front of a constitutionally appointed ALJ so long as the constitutional challenge was brought at either the ALJ or Appeals Council levels. Plaintiff cites to out-of-circuit opinions for the proposition that he has not waived his constitutional challenge by not raising it at the administrative level.  The United States Court of Appeals for the Second Circuit has not addressed the issue.  However, many courts in this

district and other courts around the United States have found that not exhausting the challenge

at the administrative level is grounds for waiver.  *See Bonilla-Bukhari v. Berryhill*, 357 F. Supp.

3d 341, 351 (S.D.N.Y. 2019) ("This Court [] agrees with the vast majority of courts that have . . ..

concluded that exhaustion before the ALJ is required." (collecting cases)); *see, e.g.*, *Tutolo v.*

*Berryhill*, No. 18CIV10538ERKNF, 2020 WL 1593568, at *6 (S.D.N.Y. Mar. 31, 2020); *Ortiz v. Saul*,

No. 1:19-CV-00942 (ALC), 2020 WL 1150213, at *8 (S.D.N.Y. Mar. 10, 2020).  Because Plaintiff

did not raise his constitutional challenge under the Appointments Clause at the administrative

level, the Court finds that he has waived the challenge.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ did not err in finding that Plaintiff

did not meet a Listing and that the ALJ's RFC determination is supported by substantial

evidence.  Plaintiff's motion is DENIED, and the Commissioner's motion is GRANTED.

SO ORDERED,

Dated: April 21, 2020
      New York, New York

*Katharine H. Parker*
_____
KATHARINE H. PARKER
United States Magistrate Judge